(No. 58366

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DICKIE GAINES, Appellant.

*Opinion filed November 30, 1984.—Rehearing denied February 1, 1985.*

SIMON, J., dissenting.

Ira A. Moltz, of Eisenberg, Bloom & Moltz, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Michael E. Shabat and Joan S. Cherry, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MORAN delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant, Dickie Gaines, was convicted of the murders of Andre Davis and Causea McCall, the attempted murder of Lenious Thomas, armed violence

against Davis, McCall and Thomas, and the armed robbery of Davis and Thomas. Pursuant to section 9—1(d) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch.38, par. 9—1(d)), the State requested a death penalty hearing, which was heard by the same jury. The jury found that there were present one or more of the aggravating factors set forth in section 9—1(b) and that there were no mitigating factors sufficient to preclude a sentence of death. (See Ill. Rev. Stat. 1979, ch. 38, par. 9—1(g).) The court sentenced the defendant to death. On direct appeal to this court (73 Ill. 2d R. 603), the armed-robbery conviction as to Andre Davis was reversed, but the other convictions and the death sentence were affirmed. (*People v. Gaines* (1981), 88 Ill. 2d 342.) A petition for rehearing in this court was denied, and the Supreme Court denied defendant's petition for writ of *certiorari. Gaines v. Illinois* (1982), 456 U.S. 1001, 73 L. Ed. 2d 1295, 102 S. Ct. 2285.

The defendant then obtained new counsel and filed a petition under the Post-Conviction Hearing Act in the circuit court. (Ill. Rev. Stat. 1981, ch. 38, par. 122—1 *et seq.*) A number of constitutional violations were alleged. The defendant maintained that his right to an impartial jury trial and his right to equal protection of the law were violated as a result of the State's systematic use of peremptory challenges during *voir dire* to exclude blacks from the jury. (U.S. Const., amends. V, VI, XIV; Ill. Const. 1970, art. I, secs. 2, 8, 13.) The defendant also stated that he was denied his right to due process of law because of the alleged existence of "street files" (investigative working files) containing exculpatory evidence, which were not tendered to him. (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, sec. 2.) Further, defendant claimed that allowing a police officer to testify at trial regarding telephone conversations between defendant and his mother and defendant and his brother, wherein

defendant was alleged to have made incriminating statements, impinged on his right to be free from unreasonable search and seizure, as well as his privilege against self-incrimination. (U.S. Const., amends. IV, V; Ill. Const. 1970, art. I, secs. 6, 10.) Finally, defendant alleged that he was denied his right to the effective assistance of counsel at trial and the sentencing hearing. U.S. Const., amend. VI; Ill. Const. 1970, art. I, sec. 8.

In a motion to dismiss the petition, the State argued that the defendant had not raised issues of the constitutional magnitude required by the Post-Conviction Hearing Act. Further, the State maintained that all issues raised in defendant's petition, with the exception of the street-files issue, were barred by the application of the doctrines of waiver and *res judicata.*

The transcript of the proceedings from the hearing on the post-conviction petition reveals that the court found that all issues raised in the petition, with the exception of the street-files issue, were either waived or decided on direct appeal in this court. Thus, the court allowed an evidentiary hearing to be held only on the street-files issue. Finding that defendant had failed to establish the existence of a street file at the hearing, the court denied the petition.

Defendant filed a notice of appeal to the appellate court. Subsequently, the State filed a motion to have the case transferred to this court. That motion was allowed. The defendant then filed a motion to reconsider the order allowing the State's motion to transfer the post-conviction appeal. That motion was denied.

Review of the petition for post-conviction relief, in this court, raises two issues: (1) Did the trial court err in denying the post-conviction petition? and (2) Does the transfer of defendant's appeal from the appellate court to this court deprive him of due process and equal protection of the law?

The facts relating to the underlying crimes involved in this case will not be set out in their entirety, since the defendant does not maintain that his conviction was not supported by the evidence. Rather, relevant facts will be discussed as they become germane to the issues on review. Further, it is well established that a post-conviction proceeding is not one wherein a defendant's guilt or innocence is determined, but a new proceeding meant to delve into the constitutional phases of the original conviction which have not previously been determined. *People v. Vail* (1970), 46 Ill. 2d 589, 591; *People v. French* (1970), 46 Ill. 2d 104, 108, *cert. denied* (1971), 400 U.S. 1024, 27 L. Ed. 2d 636, 91 S. Ct. 590; *People v. Somerville* (1969), 42 Ill. 2d 1, 3-4.

Defendant, who is black, was tried and sentenced by an all-white jury. It is his position that the State's use of its peremptory challenges to exclude every prospective black juror resulted in the denial of his sixth amendment right to an impartial jury trial, as well as his fifth and fourteenth amendment right to equal protection of the law. (U.S. Const., amends. V, VI, XIV; Ill. Const. 1970, art. I, secs. 2, 8, 13.) On direct appeal, this court was confronted with the same issue. Finding that defense counsel, in the trial court, failed to raise the issue until all the jurors had been sworn, and that he had failed to establish a record which would demonstrate that all peremptorily challenged veniremen were black, the court resolved the issue against defendant. (*People v. Gaines* (1981), 88 Ill. 2d 342, 359.) In an affidavit submitted by defendant in support of his post-conviction petition, he asserts that the State utilized its peremptory challenges "to exclude five or six Black jurors." Because this court, on direct appeal, answered this issue, the defendant's post-conviction claim regarding jury selection is *res judicata*. It is well established that "where an appeal was taken from a conviction, the judgment of the reviewing

court is *res judicata* as to all issues actually raised, and those that could have been presented but were not are deemed waived." *People v. French* (1970), 46 Ill. 2d 104, 107, *cert. denied* (1971), 400 U.S. 1024, 27 L. Ed. 2d 636, 91 S. Ct. 590; see *People v. Burns* (1979), 75 Ill. 2d 282, 290; *People v. Partin* (1977), 69 Ill. 2d 80, 83.

Moreover, under the holding of *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, which has been followed by this court (*People v. Williams* (1983), 97 Ill. 2d 252; *People v. Payne* (1983), 99 Ill. 2d 135), the defendant's claim regarding jury selection is insufficient to raise an issue of constitutional proportion. In *Swain,* the court held that "the Constitution [does not] requir[e] an examination of the prosecutor's reasons for the exercise of his challenges in any given case." (380 U.S. 202, 222, 13 L. Ed. 2d 759, 773, 85 S. Ct. 824, 837.) Rather, a constitutional issue is raised only when the record demonstrates that blacks in a particular county or State have been consistently and systematically denied the opportunity to serve on juries. (380 U.S. 202, 223-24, 13 L. Ed. 2d 759, 774-75, 85 S. Ct. 824, 838.) While the holding in *Swain* was articulated on the basis of equal protection guarantees, this court has expressly found that "the authority of *Swain* was not lessened because of the recognition of a sixth amendment fair-cross-section requirement in *Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692." (*People v. Williams* (1983), 97 Ill. 2d 252, 278; accord, *People v. Payne* (1983), 99 Ill. 2d 135, 138.) As the court noted in *Williams,* "the complaint addressed in *Taylor* is the systematic exclusion of a group from the *jury system,* not from any particular jury." (Emphasis added.) (*People v. Williams* (1983), 97 Ill. 2d 252, 278.) Defendant makes no such showing in his petition for post-conviction relief. Neither the petition nor the affidavit raises the issue of the case-by-case exclusion of blacks

required by *Swain*. As such, defendant's assertions regarding the State's use of its peremptory challenges do not raise an issue of "substantial denial of his rights under the Constitution" as required by the Post-Conviction Hearing Act (Ill. Rev. Stat. 1981, ch. 38, pars. 122—1, 122—2; *People v. Curtis* (1971), 48 Ill. 2d 25, 27; *People v. Harper* (1969), 43 Ill. 2d 368, 372).

As another basis for post-conviction relief, the defendant alleges violations of his constitutional right to be free from unreasonable search and seizure and his privilege against self-incrimination (U.S. Const., amends. IV, V; Ill. Const. 1970, art. I, secs. 6, 10). This allegation is premised on the admission of a police officer's testimony during defendant's original trial. At that trial, the police officer was allowed to testify regarding telephone conversations between the defendant and his mother and defendant and his brother, wherein defendant allegedly made self-incriminating statements. The officer overheard the conversations on an extension telephone in the home of defendant's mother. The officer's testimony indicated that Mrs. Gaines consented to the officer's use of the telephone.

On the initial appeal to this court, defendant objected to the admission of the officer's testimony, claiming that section 14—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 14—2) had been violated. As such, defendant maintained that the trial judge erred in denying his motion to exclude that portion of the officer's testimony. This court found that "[t]he monitoring of the defendant's telephone conversation *** was not proscribed by section 14—2(a), for an extension telephone is not an eavesdropping device as that term is defined by section 14—1(a)." (*People v. Gaines* (1981), 88 Ill. 2d 342, 363.) In addition, the court expressly found that the admission of the officer's testimony was not prejudicial.

The affidavit of defendant's mother, which was submitted with the post-conviction petition, does not, as defendant maintains, raise "a totally different factual situation" in the post-conviction proceeding. In that affidavit, Mrs. Gaines stated that she allowed the officer to listen on the extension phone because she was under duress and was unaware that she could have denied the officer access to the telephone. We need not consider whether the substance of the affidavit was sufficient to vitiate the consent the officer had received from Mrs. Gaines. As this court stated in its first review, "the question of consent becomes material only if an eavesdropping device has been employed." *People v. Gaines* (1981), 88 Ill. 2d 342, 363-64.

We think it is clear that the defendant's post-conviction claim of constitutional deprivation, based on the admission of the officer's testimony, was fully reviewed by this court on the original appeal. "[T]he Post-Conviction Hearing Act was not intended to be used as a device to obtain another hearing upon a claim of denial of constitutional rights where there has already been a full review of the issues raised." (*People v. Cox* (1966), 34 Ill. 2d 66, 67.) Nor can this policy be defeated by rephrasing previously addressed issues in constitutional terms when raising them in the post-conviction petition. (*People v. Beckham* (1970), 46 Ill. 2d 569, 571; *People v. Cox* (1966), 34 Ill. 2d 66, 68.) As such, the post-conviction trial court correctly found that this issue is *res judicata.*

Defendant also argues that at both the trial and the sentencing hearing he was denied his constitutional right to the effective assistance of counsel. In support of this sixth amendment argument, defendant advanced several grounds which allegedly demonstrate his denial of effective assistance of counsel. Initially, defendant points to his counsel's failure during *voir dire* to make a timely objection to the State's use of its peremptory challenges

to exclude blacks. In addition, counsel failed to make a record which would demonstrate that the veniremen challenged by the State were black. Defendant maintains that counsel's incompetence was most "glaring" at the sentencing phase of his trial. At that time, defendant did not take the stand, and his counsel failed to offer a jury instruction that the jury should not consider his failure to testify. Moreover, defense counsel called no witnesses to either rebut the State's evidence in aggravation or testify as to mitigating factors. Further, defendant alleges that his counsel's closing argument was defective, since it was limited to an attack on capital punishment and did not present the defendant as an individual. Finally, defendant argues that his representation was inadequate because defense counsel failed to present evidence or data to demonstrate the "unconstitutionally arbitrary and capricious" nature of the State's absolute authority to request the death penalty.

This court has recognized that "where all of counsel's alleged trial errors and other facts relating to the issue of incompetency of his representation appear on the face of the record, that issue could properly be deemed *res judicata*." (*People v. Somerville* (1969), 42 Ill. 2d 1, 4.) The strict application of the doctrine of *res judicata* may be relaxed, however, "where fundamental fairness so requires." (*People v. Burns* (1979), 75 Ill. 2d 282, 290; *People v. Hamby* (1968), 39 Ill. 2d 290, 291.) In the case at bar, the same attorney represented the defendant at trial and on direct appeal in this court. It would be unreasonable to expect appellate counsel to convincingly raise and argue his own incompetency.

Nevertheless, a post-conviction petitioner is not entitled to an evidentiary hearing as a matter of right. A hearing is called for only when the petitioner makes a " 'substantial showing of a violation of constitutional rights' and to accomplish this the allegations in the peti-

tion must be supported by the record in the case or by accompanying affidavits." (*People v. Curtis* (1971), 48 Ill. 2d 25, 27.) If such allegations and affidavits are adequate to demonstrate incompetent representation, an evidentiary hearing must be held. (*People v. Stepheny* (1970), 46 Ill. 2d 153, 157.) The post-conviction trial court, in this case, ruled that this issue had been waived and was *res judicata.* The court specifically found, however, that the allegations regarding ineffective assistance of counsel did not demonstrate a denial of this sixth amendment right. We agree with the trial court that the facts alleged regarding ineffective assistance of counsel are insufficient to require an evidentiary hearing.

The United States Supreme Court and this court have recently addressed the issue of effective assistance of counsel. (*Strickland v. Washington* (1984), 466 U.S. ___, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Royse* (1983), 99 Ill. 2d 163.) Prior to the *Royse* decision, the courts of this State adhered to two standards when considering claims of ineffective assistance of counsel. In *Royse*, the court held that the effectiveness of both privately retained counsel and court-appointed counsel would be decided according to the test for court-appointed counsel articulated in *People v. Greer* (1980), 79 Ill. 2d 103. (*People v. Royse* (1983), 99 Ill. 2d 163, 168.) Following that test, representation is constitutionally deficient "if *** appointed counsel was actually incompetent, as reflected in the performance of his duties as trial attorney, and if this incompetence produced substantial prejudice to the defendant without which the result of the trial would probably have been different." *People v. Greer* (1980), 79 Ill. 2d 103, 120-21.

A two-part test of effective assistance of counsel was outlined by the Supreme Court in *Strickland v. Washington* (1984), 466 U.S. ___, 80 L. Ed. 2d 674, 104 S. Ct. 2052. Under *Strickland,* the defendant must first

show that his counsel's performance "fell below an objective standard of reasonableness." (466 U.S. ___, ___, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2065.) Counsel's performance will not, however, be found to constitute ineffective assistance under the Constitution unless it is shown to be prejudicial to the defense. (466 U.S. ___, ___, 80 L. Ed. 2d 674, 696, 104 S. Ct. 2052, 2067.) To demonstrate prejudice "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (466 U.S. ___, ___, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068.) To prove a charge of ineffective assistance under *Strickland* and *Royse*, therefore, a defendant would have to demonstrate not only that his attorney was incompetent but also that this incompetence was prejudicial with regard to the outcome of his case. See *People v. Stewart* (1984), 104 Ill. 2d 463, 491-92, and *People v. Albanese* (1984), 104 Ill. 2d 504, 525-27, wherein the court expressly adopts the *Strickland* rule for challenges to effectiveness of both retained and appointed counsel.

As *Strickland* recognized, a court need not decide the performance component of an ineffectiveness claim before analyzing the prejudice component, since an insufficient showing on either will defeat the constitutional claim. Thus, the court observed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (466 U.S. ___, ___, 80 L. Ed. 2d 674, 699, 104 S. Ct. 2052, 2070.) We find that the challenged conduct of counsel in the instant case, even if found to be unreasonable, is insufficient to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." (466 U.S. ___, ___, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068.) As such, we need not decide if trial counsel's representation was incompetent, although, based on the record, we do not believe that such was the case.

Evidence at trial of defendant's guilt and the aggravating circumstances brought forth during the sentencing phase of the trial were overwhelming. Lenious Thomas, the surviving victim, testified as to his eyewitness observation of defendant's unprovoked shooting spree which resulted in the death of Davis and McCall. (*People v. Gaines* (1981), 88 Ill. 2d 342, 348.) Indeed, on direct appeal in this court, except for the charges of the armed robbery of Thomas and Davis, defendant made no claim that his guilt was not proved beyond a reasonable doubt. Additional evidence in aggravation was offered by the State at the sentencing hearing. A school teacher testified that, several years before the crimes involved in the instant case, she was attacked and robbed by the defendant. At the time she was five months pregnant. Defendant was found guilty of robbery and sentenced to a term of imprisonment. Testimony was also offered by two of defendant's female friends. Their testimony reveals that, prior to defendant's apprehension for the instant crimes, he contacted them and requested their assistance, indicating that their refusal to cooperate would result in their injury or death. Finally, two deputy sheriffs assigned to the courtroom facility testified to two instances when the defendant threatened them as they were transferring him to the courtroom from the lockup. On yet a third occasion, the deputies testified that a patdown of the defendant disclosed a steel pick, two hacksaw blades and a $10 bill.

In light of the evidence in aggravation, defendant's bare allegation of attorney incompetence for failure to present any evidence in mitigation at the sentencing

hearing does not support a finding of prejudice. Noticeably absent from defendant's post-conviction petition, as well as on the former appeal in this court, is any evidence in mitigation which could have been offered at the death penalty hearing. When confronted with a similar argument in *People v. Eddmonds* (1984), 101 Ill. 2d 44, 69-70, this court found that trial counsel's failure to offer evidence in mitigation was not prejudicial, where defendant failed to show that any evidence was available at the time of the sentencing hearing to demonstrate the mitigating factor of diminished mental capacity. See also *People v. Kubat* (1983), 94 Ill. 2d 437, 488.

Equally unpersuasive is defendant's claim that his counsel's closing argument at the sentencing hearing was so inadequate that he was denied the effective assistance of counsel. The transcript reveals that trial counsel's closing argument was, indeed, limited to an emotional attack on the morality of capital punishment and the senselessness of imposing the death penalty on a 20-year-old young man. We do not find, however, that counsel was incompetent in presenting such an argument. As we stated in *Eddmonds*:

> "Under the circumstances, where trial counsel was unable to present substantial evidence in mitigation, we find no basis to question counsel's decision to present a brief argument for mercy. Errors in judgment or trial strategy do not establish incompetence." 101 Ill. 2d 44, 70.

Further, this court has consistently upheld the propriety of the discretion vested in the State to seek the death penalty. (*People ex rel. Carey v. Cousins* (1979), 77 Ill. 2d 531; *People v. Kubat* (1983), 94 Ill. 2d 437, 501-02.) Indeed, this very issue was decided against defendant on direct appeal in this court. *People v. Gaines* (1981), 88 Ill. 2d 342, 369.

Moreover, we do not find that the outcome of the sentencing hearing was prejudiced by counsel's failure to

tender a jury instruction cautioning the jurors to disregard defendant's failure to testify. Had counsel offered the instruction, he would have risked the possibility of placing defendant in a weaker position by drawing the jury's attention to the absence of his testimony. The choice not to tender the instruction must be viewed as a strategic decision and, therefore, not subject to review. *People v. Greer* (1980), 79 Ill. 2d 103, 122.

Finally, we turn to defendant's challenge of his counsel's performance during *voir dire*. The holding of *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, makes it clear that to raise an issue of constitutional proportions when questioning the use of peremptory challenges, a showing must be made of the systematic and purposeful exclusion of blacks over a period of time. Defendant objects to trial counsel's failure to make a timely objection to the State's use of its peremptory challenges, as well as his failure to create a record which would show the race of the peremptorily challenged veniremen. Had counsel done so, however, he would not have raised a constitutional issue without the additional showing of systematic, case-by-case exclusion required under *Swain.* There is no indication in defendant's post-conviction petition or brief that such information was available to counsel at the time of the trial. It follows, therefore, that defense counsel's errors during *voir dire* cannot be said to have prejudiced the defendant's cause.

On the basis of the facts contained in the petition, as well as the record as a whole, we conclude that defendant has failed to demonstrate incompetent representation. As such, the post-conviction trial court properly dismissed the claim without an evidentiary hearing.

Although finding defendant's argument regarding the street files to be based upon "a bare allegation on information and belief," the court, nevertheless, found that it

created a factual issue and allowed a hearing to be held on that single issue. In support of its motion to dismiss, the State had filed the affidavits of two assistant State's Attorneys and three police officers. Each affiant stated that, to his knowledge, no street files or exculpatory evidence regarding the defendant existed. At the hearing, a police officer was called as a court's witness. His testimony indicates that pursuant to a thorough search of all investigative files in area II of the Chicago police department, in addition to a copy of the permanent retention file of the department, he determined that no street file existed in area II regarding the instant case. Following closing arguments, the court found that the defendant had not established the existence of any street files, and it therefore denied the petition.

In a post-conviction proceeding, "the petitioner has the burden of proof and must show that he has been deprived of a substantial constitutional right before he is entitled to any relief." (*People v. Harper* (1969), 43 Ill. 2d 368, 372.) Clearly, the defendant has failed to carry this burden. His contention that the State has suppressed evidence favorable to his defense is merely a conclusory statement, unsupported by affidavit or other evidence. We would note that the post-conviction trial court liberally construed the requirements of the Post-Conviction Hearing Act when it allowed the hearing as to this issue. At that hearing, however, defendant was unable to substantiate the constitutional claim. Having found no basis for relief under the Post-Conviction Hearing Act, the trial court properly denied the petition.

Finally, we must address the defendant's contention that he was deprived of due process and equal protection under the law because he was denied intermediate appellate court review of the trial court judgment denying his petition for post-conviction relief. Our Rule 651 (73 Ill. 2d R. 651) provides that an appeal from a final judgment

of the circuit court in post-conviction proceedings lies in that court. We find, however, that the constitutional mandate of article VI, section 4 (Ill. Const. 1970, art. VI, sec. 4), must control in the review of post-conviction proceedings passing upon a prior conviction wherein the death penalty was imposed. Article VI, section 4(b), provides:

"(b) Appeals from judgments of Circuit Courts imposing a sentence of death shall be directly to the Supreme Court as a matter of right. The Supreme Court shall provide by rule for direct appeal in other cases." (Ill. Const. 1970, art. VI, sec. 4(b).)

Pursuant to this constitutional directive, Supreme Court Rule 603 and section 9—1(i) of the Criminal Code of 1961 require that an appeal, in all cases where the death penalty has been imposed, shall be taken directly to this court (73 Ill. 2d R. 603; Ill. Rev. Stat. 1979, ch. 38, par. 9—1(i)).

The defendant argues that Rule 603 deals only with the direct appeal of a judgment of the circuit court imposing the sentence of death and not an appeal from a denial of post-conviction relief, since the sentence of death was not imposed at the time of the denial of the post-conviction petition. Yet, defendant's prayer for relief, in his post-conviction petition, requests the court to vacate the judgment of conviction and the sentence imposed therein. On review, we have found that the constitutional errors alleged by defendant are insufficient to invalidate the conviction or the sentence of death. By affirming the trial court's denial of defendant's petition, therefore, our decision has the effect of reaffirming the imposition of the death penalty.

Further, defendant's due process and equal protection arguments are unpersuasive. This court analyzed the automatic appellate-review procedure set forth in section 9—1(i) of the Criminal Code of 1961, as well as this

court's rules adopted in compliance with the statute, in *People v. Brownell* (1980), 79 Ill. 2d 508. Finding that the Illinois statute was constitutional, the court compared our statutory provision with those approved by the United States Supreme Court in *Gregg v. Georgia* (1976), 428 U.S. 153, 49 L. Ed. 2d 859, 96 S. Ct. 2909, *Proffitt v. Florida* (1976), 428 U.S. 242, 49 L. Ed. 2d 913, 96 S. Ct. 2960, and *Jurek v. Texas* (1976), 428 U.S. 262, 49 L. Ed. 2d 929, 96 S. Ct. 2950. In *Brownell,* the court quoted from the *Jurek* decision, which found that "[b]y providing prompt judicial review of jury's decision in a court with statewide jurisdiction, Texas has provided a means to promote the evenhanded, rational, and consistent imposition of death sentences under law." (428 U.S. 262, 276, 49 L. Ed. 2d 929, 941, 96 S. Ct. 2950, 2958.) The *Brownell* court concluded that the same uniformity would be achieved under our statute. *People v. Brownell* (1980), 79 Ill. 2d 508, 543.

The argument advanced by defendant involves neither a suspect class nor a fundamental interest. (See *People ex rel. Tucker v. Kotsos* (1977), 68 Ill. 2d 88, 96-98.) In the absence of a suspect classification or a fundamental right, legislation need only bear a rational relationship to a legitimate governmental interest. (*Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 120.) Statewide review, in this court, of post-conviction cases involving the death penalty will further the governmental interest in uniform and expeditious review of death sentences recognized in *Brownell.* As such, we hold that an appeal from a final judgment of the circuit court in a post-conviction proceeding lies directly in this court in cases where the original conviction resulted in the imposition of the death penalty.

For the reasons stated herein, the trial court's denial of defendant's post-conviction petition is affirmed. Accordingly, defendant's convictions and sentence are af-

firmed. The clerk of this court is directed to enter an order fixing Tuesday, May 21, 1985, as the date on which the sentence of death entered in the circuit court is to be executed. A certified copy of this order shall be furnished by the clerk of this court to the Director of Corrections and to the wardens of the Illinois State Penitentiary at Menard and Joliet.

*Judgment affirmed.*

JUSTICE SIMON, dissenting:

My first departure from the majority opinion concerns an irregularity in our hearing this direct appeal. Rule 651 (87 Ill. 2d R. 651(a)) directs that appeals from "a final judgment of the circuit court" move to the appellate court. The majority substitutes for this unambiguous command the requirements found in Rule 603 which deal with appeals from the imposition of the death penalty. (87 Ill. 2d R. 603.) Rule 603, though, which is constitutionally mandated (Ill. Const. 1970, art. VI, sec. 4), applies only to appeals from decisions which initially impose the death sentence by requiring that the imposition of a death sentence must be directly appealed to this court. A post-conviction hearing, on the other hand, only reviews a final judgment which may or may not have imposed the death sentence; the post-conviction hearing does not of, itself, impose a death sentence. The majority's reliance on Rule 603 is misplaced; Rule 651 applies to appeals from judgments denying post-conviction relief. I would require appeals from post-conviction hearings to be heard by the appellate court before any appeal could be heard by this court. The *ad hoc* application of Rule 651 in which this court has engaged by exempting appeals from post-conviction judgments in cases where a death sentence was previously imposed constitutes a violation of the equal protection clauses of the United States and Illinois constitutions (U.S. Const.,

amends. V, XIV; Ill. Const. 1970, art. I, sec. 2) by treating defendants in such cases differently than all other defendants without any constitutional sanction for the difference in treatment.

A fear is expressed in the majority opinion that uniform results in death cases would not result without direct appeal to this court. (105 Ill. 2d at 99.) A similar view is expressed in the majority opinion in *People v. Lewis* (1984), 105 Ill. 2d 226, 231-32. This concern seems no greater in this area of the law than in any other. Without a constitutional or legislative directive, I see no reason to resolve conflicts in our circuit or appellate courts where death sentences are being reviewed any differently than we do in any other area of the law. Uniformity could be easily achieved by accepting for review all post-conviction appellate court decisions of cases where death sentences had been imposed at trial. The advantage to this procedure is obvious. In this difficult and painful area, the more minds reviewing the procedures employed by our circuit courts, the more certain we can be about the correctness, fairness and justice of decisions to impose this most final of penalties.

Even if this court had jurisdiction to hear this appeal, I would not join the majority because the systematic exclusion of black jurors by the prosecutor through the use of peremptory challenges denied the defendant his constitutional right to an impartial jury. For the reasons set forth in my dissenting opinions in *People v. Payne* (1983), 99 Ill. 2d 135, 140, and *People v. Moore* (1984), 101 Ill. 2d 549 (appeal denied), I would reverse the circuit court's decision to deny the defendant's petition for post-conviction relief. I note that another State has, since the decisions in *Payne* and *Moore*, departed from the approach taken by the Supreme Court in *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824. The Florida Supreme Court in *State v. Neil*

(Fla. 1984), 457 So. 2d 481, interpreting its own constitutional provisions which are similar to ours, determined that the use of peremptory challenges to excise a distinct racial group from a jury was a denial of the defendant's right to an impartial jury. Florida joins Massachusetts (*Commonwealth v. Soares* (1979), 377 Mass. 461, 387 N.E.2d 499, *cert. denied* (1979), 444 U.S. 881, 62 L. Ed. 2d 110, 100 S. Ct. 170) and California (*People v. Wheeler* (1978), 22 Cal. 3d 258, 583 P.2d 748, 148 Cal. Rptr. 890) by interpreting its own constitution to deny this unconstitutional practice. (Cf. *State v. Crespin* (1980), 94 N.M. 486, 612 P.2d 716 (holding defendant presented insufficient facts to require a new trial following a *Wheeler* and *Soares* approach).) This strengthens my belief that this court should reevaluate its position in light of this development and the continued unease expressed by members of the Supreme Court over the validity of *Swain*. See *Thompson v. United States* (1984), 469 U.S. ____, ____, 83 L. Ed. 2d 369, 369, 105 S. Ct. 443, 444 (Brennan, J., joined by Marshall, J., dissenting from denial of *certiorari*).

The majority also fails to properly resolve the defendant's claim that his constitutional rights were violated by the eavesdropping of Officer Dwyer. For the reasons set forth in Justice Clark's dissenting opinion as well as mine (*People v. Gaines* (1981), 88 Ill. 2d 342, 387, 391) in the defendant's original appeal, I believe the majority's decision in this case is incorrect. Moreover, this appeal presents a new aspect, in that the defendant's mother, Rebecca Gaines, filed an affidavit stating that she never consented to the eavesdropping. Therefore, the present case should not be controlled by the resolution of the eavesdropping issue in the original appeal.

Finally, for the reasons set forth in my separate opinions in *People v. Lewis* (1981), 88 Ill. 2d 129, 179 (Simon, J., dissenting), *People v. Silagy* (1984), 101 Ill. 2d 147, 184 (Simon, J., concurring in part and dissenting

in part), and *People v. Albanese* (1984), 104 Ill. 2d 504 (Simon, J., concurring in part and dissenting in part), I believe that the Illinois death penalty statute is unconstitutional, and, therefore, a death sentence should not be imposed on this defendant.