NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220172-U

NO. 4-22-0172

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 21, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| ERIC V. HICKMAN, | ) | No. 02CF701 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John M. Madonia, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Turner and Doherty concurred in the judgment.

**ORDER**

¶ 1  *Held:*  The appellate court affirmed the trial court's second-stage dismissal of defendant's postconviction petition because defendant failed to make a substantial showing of a constitutional violation.

¶ 2  In 2003, a jury found defendant, Eric V. Hickman, guilty of first degree murder (720 ILCS 5/9-1(a)(3) (West 2002)), aggravated discharge of a firearm (*id.* § 24-1.2(a)(2)), two counts of aggravated battery with a firearm (*id.* § 12-4.2(a)(1)), and aggravated unlawful use of a weapon (*id.* § 24-1.6(a)(1)), committed when defendant was 18 years old. The trial court later sentenced defendant to an aggregate sentence of 80 years in prison.

¶ 3  In 2020, defendant, through counsel, filed an amended postconviction petition alleging, relevant to this appeal, that his 80-year sentence for a crime committed when he was 18 years old was unconstitutional because it was imposed without proper consideration of his youth.

¶ 4  The State filed a motion to dismiss, which the trial court ultimately granted.

¶ 5 Defendant appeals, arguing that the trial court erred by dismissing his postconviction petition at the second stage because he made a substantial showing that his 80-year sentence was imposed without proper consideration of his youth, in violation of the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). We disagree and affirm.

¶ 6                                    I. BACKGROUND

¶ 7                          A. The Charges Against Defendant

¶ 8 In August 2002, the State charged defendant with one count of first degree murder (720 ILCS 5/9-1(a)(3) (West 2002)), one count of aggravated discharge of a firearm (*id.* § 24-1.2(a)(2)), two counts of aggravated battery with a firearm (*id.* § 12-4.2(a)(1)), and one count of aggravated unlawful use of a weapon (*id.* § 24-1.6(a)(1)). (The State also charged defendant with aggravated battery to a child but dismissed that charge before trial.)

¶ 9 The charges alleged, generally, that defendant was a street gang member who initiated a gunfight at an intersection in Springfield, Illinois, by shooting at an occupied vehicle, causing the death of one person and injuries to two others, including a child.

¶ 10                                  B. The Jury Trial

¶ 11 In November 2003, the trial court conducted defendant's jury trial, at which the following evidence was presented. In 2002, defendant was a member of the Boss Players street gang. That summer, several shooting incidents occurred between defendant's gang and a rival gang known as the Family Mob. During one of those incidents, defendant was shot in the face. Defendant did not cooperate with the police investigation into that shooting but believed Carmichael Bennett, a Family Mob member, was the person who shot him.

¶ 12        On the afternoon of July 13, 2002, Cedric Joiner drove a Buick sedan to Bennett's girlfriend's house to pick up Bennett. Shimeka Scott, Chahila Davis, and Davis's 19-month-old son, C.W., were in the car with Joiner. While Joiner was inside the house retrieving Bennett, Scott and Davis saw defendant get out of a red Chevy that had parked up the street. They alerted Joiner and Bennett by phone of defendant's presence nearby, and Joiner and Bennett waited in the apartment until the red Chevy left the area.

¶ 13        After the Chevy drove away, Joiner and Bennett got into the Buick with Scott, Davis, and C.W. and drove in the opposite direction of the Chevy. Shortly thereafter, however, they encountered the Chevy, which turned around to follow the Buick. When the Buick was stopped at the intersection of Martin Luther King Jr. Drive and East Ash Street, the Chevy pulled up alongside it. Inside the red Chevy were defendant, Jerricko Clark, Lamar Crawford, and Delbert Marshall.

¶ 14        The testimony was conflicting as to how the gunfire started. Some witnesses stated that the first shots were fired by someone in the Chevy. Defendant testified that he fired first but he did not pull his gun out until after Bennett pointed a gun at him. Bennett testified that although he put his gun in his lap when he saw the Chevy pulling up, he did not raise his gun until after the shooting started and four shots had been fired from the Chevy.

¶ 15        During the incident, between 19 and 24 shots were fired and five people were injured. Specifically, inside of the Buick, (1) 19-month-old C.W. was shot twice in the chest and (2) Joiner was shot in the back. Both survived their injuries. Inside of the Chevy, (1) Clark was killed when a bullet entered his upper back and severed his aorta, (2) Crawford suffered a grazing bullet wound on his head, and (3) defendant was shot in the elbow and buttocks.

¶ 16        The jury found defendant guilty of all the charges.

¶ 17                                    C. The Sentencing Hearing

¶ 18          In April 2004, the trial court conducted defendant's sentencing hearing. The court

and the parties received a presentence investigation report (PSI) prepared at the court's order by

the probation department. The State did not present any evidence in aggravation. Defendant

presented evidence in mitigation.

¶ 19                                           1. *The PSI*

¶ 20          The PSI was seven pages long and contained detailed information about

defendant's (1) prior criminal and juvenile delinquency record, (2) personal and family

background, (3) mental and physical health, and (4) education and employment background.

According to the PSI, defendant was born in September 1983.

¶ 21          As a juvenile, defendant had "four brief encounters with Juvenile Probation,"

including (1) a 1994 arson, (2) a 1996 retail theft, (3) a 1996 criminal trespass to property, and

(4) a 1997 aggravated battery, discharge of air rifle, and reckless conduct. Defendant was

charged with these offenses but subsequently received only "warning[s]." Later in 1997,

defendant was adjudicated a delinquent minor for reckless driving and was sentenced to

probation. He did not abide by his probation and failed to attend school each day.

¶ 22          The PSI also contained information from a social history report written by a

probation officer in 1997, who noted that defendant's " 'amount of delinquency *** for a youth

*** [of] fourteen' " was " 'alarming.' " The officer also wrote, " 'It is imperative that

[defendant's] behavior change in order for him to become a productive member of society in the

future. The minor is young enough that hopefully, with the help of others he can learn how to act

in a more positive manner.' "

¶ 23          As an adult, between 2000 and 2002, defendant was found guilty nine times of

driving on a suspended or revoked license, resulting primarily in fines but also five separate sentences of imprisonment in the county jail.

¶ 24 The PSI also noted that defendant was raised by both parents until his father was killed in 1993. He reported that he never suffered any physical, mental, or sexual abuse and that his childhood was " 'good, mom treated me good.' " Although defendant was not married, he had fathered two children, ages 15 months and 11 months.

¶ 25 Defendant reported that he was in good physical, mental, and emotional health, and he had never received treatment or medication for any ailments. He also reported that he had never tried alcohol but began smoking marijuana at age 12. However, he successfully completed a drug treatment program in 1998.

¶ 26 Regarding his educational history, defendant was transferred to an alternative school in seventh grade due to behavioral problems and poor performance. Defendant enrolled in high school as a freshman in 1999 but did not receive any credits for that year due to absences. He did not obtain a general equivalency diploma (GED). Defendant had never been employed but reported that he enjoyed playing video games and basketball. He denied being a member of a gang but stated he " 'hangs out' " with the Boss Players gang members.

¶ 27 2. *Defendant's Evidence in Mitigation*

¶ 28 Defendant's mother testified in mitigation that as a child, defendant did not have a violent nature. She stated he was a "typical kid" who "had arguments and that's about it." She asked the trial court for leniency on her son's behalf. Defendant's mother also testified that she believed (1) defendant armed himself with a gun only because he thought it was necessary to protect himself, (2) he would not have armed himself or used the gun if he knew it would lead to his friend's death, and (3) defendant would never intentionally harm a two-year-old child.

¶ 29    Clark's mother also testified in mitigation. She, too, testified about defendant's childhood, stating that defendant and Clark went to grade school and participated in sports together. She testified that defendant was not a violent person and that he was sorry for Clark's death. She further stated that defendant should not be punished as the murderer of her son because "he didn't do that by his self and it is not fair." She asked for leniency on defendant's behalf.

¶ 30                    3. *The Arguments and Sentence*

¶ 31    After hearing defendant's evidence in mitigation, the trial court recited the potential penalties for each offense and informed the parties that (1) because defendant inflicted great bodily harm and (2) due to the "the nature and circumstances of the offense," consecutive sentences were required "to protect the public from further criminal conduct by the Defendant." Defense counsel objected, arguing that the legislature intended for consecutive sentencing to apply only if the defendant being sentenced was the principal offender and, in the present case, defendant was guilty only by accountability. The court overruled defense counsel's objection and proceeded to hear the arguments of the parties.

¶ 32    The State argued that defendant's actions the day of the shooting were "a calculated, premeditated act of retaliation and revenge," and although there were multiple people involved, defendant was "the driving force behind this shooting incident." The State emphasized the nature of the offense, pointing out that 19 to 24 gunshots were exchanged between vehicles at 2 p.m. on a Saturday afternoon at a busy Springfield intersection. Neighboring buildings were hit and five people, including a toddler, were struck by bullets. The State argued it was "remarkable that only one person died out of this horrendous offense."

¶ 33    The State also parsed defendant's juvenile record, noting that (1) his contacts with

the police began at age 10 with arson and (2) he had accumulated nine police contacts by age 13. Additionally, the State noted defendant's troubles at school and failure to complete high school or obtain a GED.

¶ 34      Defendant's counsel argued that defendant "acted as he thought was appropriate given his station in life," and he sought only to protect himself because Bennett had previously shot him. Counsel argued, "All he knew was that end of town and all he knew was to take a gun and protect himself." Counsel insisted that defendant's conduct was not "an act of a person whose conduct requires that he be thrown into jail and the key thrown away." Instead, counsel argued, "It is a conduct of a 19-year-old or 18-year-old person who knew no other way to do it." Counsel referred to his client as a "young man" multiple times, asserting that defendant had acted with "immature judgment" but was not "irretrievably broken."

¶ 35      Defendant made a statement in allocution in which he reiterated that he had carried a gun to protect himself but also said he was sorry and he wished he could change everything that happened.

¶ 36      The trial court observed that, in fashioning the sentence, it must "individualize the punishment to fit the particular offender and offense, and reform and rehabilitate the offender into a productive member of society." The court then stated the following to defendant:

"[Y]ou live in a world without compassion, a world without responsibility, without humanity. Where you live is a world filled with violence and revenge. Gangs, guns, knives, and drugs are a way of life for you. You have become an uneducated, unemployable, societal misfit. You and those like you are polluting this community.

It is the opinion of this Court that society can only be protected by your

imprisonment for a long time. Your only chance for survival is to be locked up. You have wrapped yourself in a blanket of violence. Death and destruction surround you and anyone else near you like a cloud."

¶ 37    The trial court then sentenced defendant to an aggregate sentence of 80 years in prison, comprised of 40 years for murder, 20 years for each aggravated battery, and a concurrent 3 years for aggravated unlawful use of a weapon. (The court found defendant's aggravated discharge of a firearm conviction merged with his first degree murder conviction.)

¶ 38                        D. The Direct Appeal

¶ 39    In June 2004, defendant appealed his convictions and sentence, alleging, among other things, that his sentence was excessive. *People v. Hickman*, No. 4-04-0566 (2006) (unpublished order under Illinois Supreme Court Rule 23). In support of his claim, defendant pointed to the following mitigating evidence: (1) he was only 18 years old at the time of the crime, (2) he had no prior crimes "of any consequence," (3) his mother and Clark's mother asked for leniency, (4) he did not have a history of substance abuse or drug dealing, and (5) he expressed remorse. *Id.* at 22-23.

¶ 40    This court concluded that the trial court did not abuse its discretion by sentencing defendant to 80 years in prison. We observed that "[t]he record provide[d] us with no reason to believe that the trial court did not give adequate consideration to defendant' s mitigating evidence." *Id.* at 23. We further noted that, "Although defendant was only 18 years old when the shooting occurred, he had a juvenile and adult criminal record that belied his mother's testimony that he was a 'law abiding citizen' and revealed an inability to behave as the law required." *Id.* Accordingly, this court affirmed defendant's sentence.

¶ 41                        E. The Postconviction Petition

¶ 42        In 2007, defendant *pro se* filed a petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2006)), alleging that (1) trial counsel had rendered ineffective assistance in several ways not relevant to this appeal and (2) the State had failed to disclose exculpatory information. That same month, the State filed a motion to dismiss.

¶ 43        For reasons unexplained by the record, and despite defendant having been appointed counsel, defendant's petition sat dormant for 12 years.

¶ 44        In July 2019, defendant retained counsel and filed a motion for leave to file a successive postconviction petition, alleging that his 80-year sentence for a crime committed when he was 18 years old violated the eighth amendment and the proportionate penalties clause because the sentence was imposed without proper consideration of his youth. Defendant also repeated the allegations contained in his original petition.

¶ 45        When docketing defendant's motion, the trial court discovered that defendant's initial petition had never been ruled upon and directed defendant's attorney to file an amended postconviction petition.

¶ 46        In January 2020, defendant filed an amended postconviction petition that included his original claims and a new claim that his sentence was unconstitutional. Specifically, defendant alleged that "recent sentencing case law suggests that post conviction relief should be granted as the cases cited below indicate that the *Miller v Alabama* considerations [(see *Miller v. Alabama*, 567 U.S. 460 (2012))] apply to 18 and 19 years olds (*People v House*, 2019 IL App (1st) 110580) and a 51 year sentence is a '*de facto*' life sentence (*People v Buffer*, 2019 IL 122327)." Defendant asserted that *House* "eschewed a strict division between juvenile and adult at 18, *** in light of recent research showing that young adults are neurologically and

developmentally closer to adolescents than mature adults." Defendant claimed that his "excessive *de facto* life sentence did not comport with the *Miller*, *House* and *Buffer* mandates."

¶ 47     In April 2020, the State filed a motion to dismiss defendant's amended postconviction petition, which the trial court ultimately granted in February 2022.

¶ 48     This appeal followed.

¶ 49                              II. ANALYSIS

¶ 50     Defendant appeals, arguing that the trial court erred by dismissing his postconviction petition at the second stage because he made a substantial showing that his 80-year sentence was imposed without proper consideration of his youth, in violation of the eighth amendment and the proportionate penalties clause.

¶ 51     The State responds that the trial court properly dismissed defendant's petition because (1) only juveniles, not young adults like defendant, may raise *Miller*-based eighth amendment challenges and (2) defendant's proportionate penalties claim was barred by *res judicata*.

¶ 52     We agree with the State and affirm.

¶ 53                              A. The Act

¶ 54     The Act "provides a tool for criminal defendants to assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both." *People v. House*, 2021 IL 125124, ¶ 15, 185 N.E.3d 1234. "To be entitled to postconviction relief, a defendant must establish a substantial deprivation of federal or state constitutional rights in the proceedings that produced the challenged judgment." *People v. English*, 2013 IL 112890, ¶ 21, 987 N.E.2d 371.

¶ 55     "The purpose of a proceeding under the Act is to allow inquiry into constitutional

issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal." (Internal quotation marks omitted.) *House*, 2021 IL 125124, ¶ 15. "Issues that were raised and decided on direct appeal are barred by *res judicata*, and issues that could have been raised on direct appeal, but were not, are forfeited." *English*, 2013 IL 112890, ¶ 22. " '[A] defendant cannot obtain relief under the [Act] by rephrasing previously addressed issues in constitutional terms.' " *People v. Haines*, 2021 IL App (4th) 190612, ¶ 19, 188 N.E.3d 825 (quoting *People v. Franklin*, 167 Ill. 2d 1, 23, 656 N.E.2d 750, 760 (1995)); see *People v. Gaines*, 105 Ill. 2d 79, 90, 473 N.E.2d 868, 874 (1984) (stating that *res judicata* "[cannot] be defeated by rephrasing previously addressed issues in constitutional terms when raising them in the post-conviction petition").

¶ 56        "The question raised in an appeal from an order dismissing a postconviction petition at the second stage is whether the allegations in the petition, liberally construed in favor of the petitioner and taken as true, are sufficient to invoke relief under the Act." *People v. Sanders*, 2016 IL 118123, ¶ 31, 47 N.E.3d 237. At the second stage of postconviction proceedings, the petitioner bears the burden of making a substantial showing of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 35, 987 N.E.2d 767.

¶ 57        We review *de novo* a trial court's dismissal of a postconviction petition at the second stage. *Sanders*, 2016 IL 118123, ¶ 31; *People v. Dupree*, 2018 IL 122307, ¶ 29, 124 N.E.3d 908.

¶ 58                                B. This Case

¶ 59                        1. *Defendant's Eighth Amendment Claim*

¶ 60        "The eighth amendment of the United States Constitution prohibits the infliction of 'cruel and unusual punishments' (U.S. Const., amend. VIII) and applies to the states through

the fourteenth amendment (U.S. Const. amend. XIV)." *People v. Dorsey*, 2021 IL 123010, ¶ 37, 183 N.E.3d 715. In *Miller*, 567 U.S. at 479, the United States Supreme Court held that the eighth amendment "forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile [homicide] offenders."

¶ 61　　　　　The Illinois Supreme Court "has expanded the holding in *Miller* to include *** sentences that are the functional equivalent to life sentences; *i.e.*, *de facto* life sentences, which [the] court has defined as prison sentences of more than 40 years." *People v. Clark*, 2023 IL 127273, ¶ 56 (citing *Buffer*, 2019 IL 122327, ¶¶ 27, 40).

¶ 62　　　　　However, the Illinois Supreme Court has also stated that *Miller* applies only to juvenile defendants and not to young adult defendants. *People v. Moore*, 2023 IL 126461, ¶ 38. In *Moore*, the supreme court recently clarified *Miller*'s requirements and applicability when it wrote the following:

> "The *Miller* court held the eighth amendment prohibits mandatory sentencing of a juvenile to life in prison without parole. [Citation.] As this court said in *People v. Clark*, 2023 IL 127273, ¶ 54, '*Miller* did not prohibit life sentences for juveniles but, instead, held the eighth amendment required sentencing courts to have discretion in sentencing juveniles after considering the juvenile's youth and the attendant characteristics of youth.' *Miller* directly applies only to juveniles. While some of the reasoning of *Miller* could support an argument for extending its holding to young adults, the decision in *Miller* itself makes no such extension. The holding of *Miller* did not change the law applicable to young adults like [the defendants in *Moore*]." *Id.*

See *People v. Harris*, 2018 IL 121932, ¶ 54, 120 N.E.3d 900 (rejecting an 18-year-old

defendant's eighth amendment challenge to his *de facto* life sentence because the United States Supreme Court " 'drew a line between juveniles and adults at the age of 18 years' " and the defendant " 'falls on the adult side of that line' ").

¶ 63    Similarly, in *Haines*, 2021 IL App (4th) 190612, ¶ 30, this court concluded that because the defendant was 18 years old when he committed murder, "the eighth amendment rationale of *Miller* [was] inapplicable to [him]."

¶ 64    Likewise, because defendant was not a juvenile but, instead, a young adult when he committed first degree murder in this case, the eighth amendment rationale of *Miller* is unavailable to him. Accordingly, defendant cannot make a substantial showing that his sentence violated the eighth amendment.

¶ 65                    2. *Defendant's Proportionate Penalties Claim*

¶ 66    Although *Miller*-based eighth amendment challenges are not available to young adult offenders such as defendant, the Illinois Supreme Court has left open the possibility for a young adult offender to raise an as-applied constitutional challenge to a *de facto* life sentence under the proportionate penalties clause of the Illinois Constitution. *Harris*, 2018 IL 121932, ¶ 48.

¶ 67    The proportionate penalties clause requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. 1, § 11. The proportionate penalties clause of the Illinois Constitution provides at least as much, if not greater, protection as the eighth amendment. *People v. Horta*, 2016 IL App (2d) 140714, ¶ 62, 67 N.E.3d 994.

¶ 68                    a. Defendant's Claim Is Barred by *Res Judicata*

¶ 69    Nonetheless, defendant's proportionate penalties claim fails because it is barred

by the doctrine of *res judicata*. "The purpose of a postconviction proceeding is to permit inquiry into constitutional issues involved in the original conviction and sentence that were not, and could not have been, adjudicated previously on direct appeal." *English*, 2013 IL 112890, ¶ 22. "Issues that were raised and decided on direct appeal are barred by *res judicata*, and issues that could have been raised on direct appeal, but were not, are forfeited." *Id.*

¶ 70         Moreover, " '[a] defendant cannot obtain relief under the [Act] by rephrasing previously addressed issues in constitutional terms.' " *Haines*, 2021 IL App (4th) 190612, ¶ 19 (quoting *Franklin*, 167 Ill. 2d at 23); see *Gaines*, 105 Ill. 2d at 90 (*res judicata* cannot "be defeated by rephrasing previously addressed issues in constitutional terms when raising them in the post-conviction petition").

¶ 71         The recent decision of the Illinois Supreme Court in *Clark* is instructive. In *Clark*, 2023 IL 127273, ¶¶ 1, 4, the defendant was 24 years old when he committed first degree murder and robbery. At the time of the offense, in 1993, he (1) suffered from several mental disorders, including fetal alcohol syndrome, (2) had an intelligence quotient of 79, and (3) had the intellectual ability of a 13- or 14-year-old. *Id.* ¶ 4. At the sentencing hearing, the trial court imposed a sentence of 90 years in prison for murder and an additional 15 years for robbery. *Id.* ¶ 1.

¶ 72         On direct appeal, the defendant argued that his sentence was excessive, asserting that "his relative youth, severe emotional problems, abusive background, and mental disorders warranted a lesser sentence." *Id.* ¶ 21. In 1996, the appellate court affirmed the defendant's sentence on direct appeal, finding " 'no error in the [trial] court's consideration of the evidence.' " *Id.* ¶ 23.

¶ 73         In 2001 and 2012, the defendant filed postconviction petitions but did not raise

any proportionate penalties challenge to his sentence. *Id.* ¶¶ 24-25. However, when the defendant filed his third postconviction petition in 2018, he asserted that his 90-year sentence violated the proportionate penalties clause because the sentencing judge did not give sufficient weight to his intellectual disabilities or his age. *Id.* ¶ 26.

¶ 74       The supreme court held that the defendant's claim was not only forfeited because it was not included in his original petition, but also that his claim was additionally barred by *res judicata*. *Id.* ¶ 42. The court explained its holding as follows:

> "[The] [d]efendant challenged his 90-year sentence on direct appeal by invoking the same proportionate penalties clause principles that he now wants to raise anew in his proposed successive postconviction petition. The appellate court rejected [the] defendant's contentions on direct appeal and affirmed the 90-year sentence. In postconviction proceedings, a defendant's direct appeal is *res judicata* with respect to all issues decided, and the appellate court's judgment generally bars further consideration of those issues in a postconviction proceeding. [Citations.] '[A] defendant cannot obtain relief under the [Act] by rephrasing previously addressed issues in constitutional terms.' [Citation.]" *Id.* ¶ 41.

¶ 75       Likewise, defendant in the present case raised in his direct appeal the same proportionate penalties principles that he seeks to "raise anew," this time in constitutional clothing. Applying well-established precedent, because this court previously rejected on direct appeal defendant's claim that the trial court did not give sufficient consideration to his youth at sentencing, we conclude his attempt to reframe that same argument in a postconviction petition as a proportionate penalties claim is barred by *res judicata*.

¶ 76       b. Defendant Has Not Met His Burden To Show That *Miller* Applies to Him

- 15 -

¶ 77 Even if defendant's claim were not barred by *res judicata*, he has failed to allege any facts that would make a substantial showing of a proportionate penalties violation. In his amended petition, defendant alleged only the following regarding the application of *Miller* to his case:

> "[R]ecent sentencing caselaw suggests that post conviction relief should be granted [to defendant] as the cases cited below [(*House* and *Buffer*)] indicate that the *Miller v. Alabama* considerations apply to 18 and 19 year olds ***.
>
> * * *
>
> The *House* court eschewed a strict division between juvenile and adult at 18, reasoning that 'the designation that after age 18 an individual is a mature adult appears to be somewhat arbitrary,' especially in light of recent research showing that young adults are neurologically and developmentally closer to adolescents than to mature adults."

In support of his petition, defendant attached only (1) an Illinois Department of Corrections printout showing his age and sentence and (2) a transcript of his sentencing hearing.

¶ 78 Although an as-applied proportionate penalties claim is *available* to a young adult offender, he still "[bears] the burden of alleging facts showing that his particular circumstances fall under *Miller* and that a sentence imposed on an adult pursuant to the relevant statutes is nonetheless so disproportionate to the offense that it shocks the moral sense of the community." *People v. Thomas*, 2022 IL App (1st) 200164, ¶ 52.

¶ 79 In *Thomas*, the First District Appellate court affirmed the summary dismissal of the 18-year-old defendant's postconviction petition alleging an as-applied, *Miller*-based,

proportionate penalties challenge to his sentence because it "[did] not address defendant's particular circumstances." *Id.* ¶¶ 51, 54. The court observed that, "[except] to state that he was 18 at the time of the offenses, was a principal offender, and received a *de facto* life sentence, defendant's only factual allegation was that Dr. James Garbarino of Loyola University Chicago 'states that the brain does not mature until into the mid-20's.' " *Id.* ¶ 30.

¶ 80 After acknowledging that *Harris* left open the possibility for a young adult offender to raise an as-applied, *Miller*-based, proportionate penalties challenge, the First District held that "defendant's petition did not satisfy the requirement of *Harris* that a young adult defendant bears the burden of demonstrating that his particular circumstances fall under *Miller,* rather than presumptively falling under *Miller*, as would a minor at the time of the offense." *Id.* ¶ 51. The court noted that "[p]ointing to a few basic facts the trial court already knew when it imposed sentence is insufficient." *Id.* ¶ 52.

¶ 81 *Thomas* can be contrasted with another First District decision, *People v. Herring*, 2022 IL App (1st) 210355, ¶¶ 2, 48, in which the appellate court advanced the 19-year-old defendant's postconviction petition alleging a *Miller*-based proportionate penalties claim to the second stage because he alleged that "he was functionally a juvenile at the time of the offense." Specifically, the defendant alleged that he (1) "suffered from impulse control disorders *** as a direct result of his under-developed mind [and] immaturity"; (2) "could not appreciate the risks, consequences, *** [and] the circumstances associated with [his] serious charges"; and (3) "linked these facts to studies explaining the development of the young adult mind through age 25." (Internal quotation marks omitted.) *Id.* ¶ 2.

¶ 82 However, even while advancing the particular petition before it, the court stressed that its decision would *not* provide " 'carte blanche' " for young adult offenders to bring *Miller*

claims, stating, "As we have repeatedly emphasized, *the one unifying theme of Illinois case law in this area is that bare allegations of youth and a citation to* Miller *will not do*." (Emphasis added). *Id.* ¶ 50; see also *People v. Moore*, 2020 IL App (4th) 190528, ¶ 40, 170 N.E.3d 204, *aff'd*, 2023 IL 126461 (affirming the trial court's denial of leave to file a successive postconviction petition because the "[d]efendant's flat assertion that a 19-year-old's brain is more like a 17-year-old adolescent's in terms of development [was] simply insufficient to survive the more exacting standard that would warrant the filing of a successive postconviction petition").

¶ 83　　　　Like the petition in *Thomas*, defendant's petition failed to allege any particularized facts that would demonstrate *Miller* should be applied to him. Defendant has not alleged, for example, (1) how any circumstance unique to him made him functionally younger than his age of 18 at the time of his offense or (2) that he was particularly affected by any immaturity or cognitive or mental impairment. Nor has he alleged or shown how the emerging neuroscience referenced by the First District in the *House* opinion applied to him. Defendant's petition contains only a conclusory assertion, copied from another case entirely, that the brains of 18- and 19-year-olds are not as developed as those of older adults.

¶ 84　　　　Because defendant's petition contained only bare allegations of youth and a citation to *Miller* instead of particularized factual allegations demonstrating that *Miller*'s protections should be extended to him, defendant has failed to make a substantial showing of a constitutional violation and the trial court correctly dismissed his petition.

¶ 85　　　　　　　　　　　　III. CONCLUSION

¶ 86　　　　For the foregoing reasons, we affirm the judgment of the trial court.

¶ 87　　　　Affirmed.

- 18 -