(No. 64555.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ROBIN WAYNE OWENS, Appellant.

*Opinion filed May 17, 1989.—Rehearing denied September 29, 1989.*

CALVO, J., took no part.

Charles M. Schiedel, Deputy Defender, and Robert D. Seeder and Patricia G. Mysza, Assistant Defenders, of the Office of the State Appellate Defender, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Terence M. Madsen and Gary H. Schwartz, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE WARD delivered the opinion of the court:

The defendant, Robin Wayne Owens, was convicted of the murder and armed robbery of Arfranzia Hodges following a jury trial in the circuit court of Kankakee

County. At the death penalty hearing requested by the State, the same jury determined that one or more of the aggravating factors set forth in section 9—1(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(b)) existed and that there were no mitigating factors sufficient to preclude the imposition of death (see Ill. Rev. Stat. 1983, ch. 38, par. 9—1(g)). The court then sentenced the defendant to death. This court affirmed the defendant's conviction and sentence on direct appeal (*People v. Owens* (1984), 102 Ill. 2d 145), and denied his petition for rehearing. The United States Supreme Court subsequently denied the defendant's petition for writ of *certiorari*. *Owens v. Illinois* (1984), 469 U.S. 963, 83 L. Ed. 2d 297, 105 S. Ct. 361.

The defendant then filed a petition for post-conviction relief pursuant to the Post-Conviction Hearing Act (Ill. Rev. Stat. 1983, ch. 38, par. 122—1 *et seq.*) alleging, *inter alia*, that he was deprived of his right to the effective assistance of counsel at his sentencing hearing and that the Illinois death penalty statute is unconstitutional. The trial court dismissed the petition without an evidentiary hearing, concluding that the issues the defendant raised were barred from further review by the doctrines of waiver and *res judicata*. The court also observed that the conclusory allegations made in the petition did not warrant an evidentiary hearing. The defendant's appeal from this dismissal was transferred to this court for direct review, pursuant to Supreme Court Rule 651 (107 Ill. 2d R. 651).

The issue raised on this appeal is whether the trial court erred in dismissing the defendant's post-conviction petition without an evidentiary hearing. The Post-Conviction Hearing Act provides a remedy to criminal defendants who claim that substantial violations of constitutional rights occurred in their trial. (*People v. Silagy* (1987), 116 Ill. 2d 357.) A post-conviction proceeding is

not an appeal *per se*, but a collateral attack upon a final judgment (*People v. James* (1986), 111 Ill. 2d 283, 290), and the scope of post-conviction review is limited to issues which have not been, and could not have been, previously adjudicated (*People v. Gaines* (1984), 105 Ill. 2d 79). A defendant is not entitled to an evidentiary hearing as a matter of right. A hearing is required only when a defendant makes a substantial showing that his constitutional rights were violated and the record or accompanying affidavits support the allegations in the petition. *People v. Silagy* (1987), 116 Ill. 2d 357, 365.

The defendant first claims that he is entitled to an evidentiary hearing to determine whether he was deprived of his sixth amendment right to the effective assistance of counsel at the sentencing stage of his trial. The defendant argues that his trial counsel was ineffective for failing to call certain witnesses to present mitigation testimony at the second stage of his death penalty hearing. He argues that these witnesses would have provided crucial testimony regarding his personal background which may have influenced one or more jurors to spare him from the death penalty.

The State argues that the defendant has waived this issue by failing to raise it on direct appeal. Generally, the issue of a trial counsel's competence is waived where the defendant's appellate counsel fails to raise the issue on direct appeal. The waiver rule is relaxed, however, where the facts relating to the issue of incompetency do not appear on the face of the record. (See *People v. Gaines* (1984), 105 Ill. 2d 79, 91.) Here, the trial record reveals that the defendant's trial counsel did not present mitigation testimony relating to the defendant's personal background to the sentencing jury. As the record does not show that the mitigation evidence which the defendant now presents was on the face of the record and available to defendant's counsel on direct appeal, we will

consider the merits of the defendant's ineffective-assistance claim.

In *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2055, the Supreme Court formulated a two-part test for evaluating whether a claim of ineffective assistance of counsel rises to the level of a constitutional deprivation. The defendant must first demonstrate that counsel's performance was deficient. Courts presume that counsel's performance fell within the wide range of professionally competent assistance. To overcome this presumption, the defendant must prove that his counsel's representation fell below an objective standard of reasonableness. (*Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.) A defendant must also prove that his counsel's deficient performance substantially prejudiced his defense. To demonstrate prejudice, a defendant must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

The defendant here claims that his trial counsel was incompetent because he failed to offer what would have been the mitigating testimony of his father, his girlfriend and his girlfriend's mother to the sentencing jury. The defendant cites *Kubat v. Thieret* (N.D. Ill. 1988), 679 F. Supp. 788, in support of this claim. The *Kubat* decision, however, is factually distinguishable from this case. In *Kubat*, the defendant, before trial, gave his attorney the names of 15 witnesses who were willing to testify favorably regarding his character. These witnesses were not family members, whose testimony might be discounted, but neighbors and co-workers who were well-respected citizens in their communities. These witnesses would have testified that they admired Kubat and did not believe he was capable of murder, and their testimony

posed no risk of exposing the defendant to damaging rebuttal evidence. Instead of presenting mitigating evidence to the sentencing jury, Kubat's counsel simply made an unpersuasive plea to the jurors' religious beliefs in closing argument.

The mitigation testimony that the defendant claims was erroneously omitted here was much less favorable than that at issue in *Kubat*. Here, it was 3, rather than 15, witnesses who were available to testify on the defendant's behalf. The first prospective witness was the defendant's father, Lucious Owens. Mr. Owens submitted an affidavit in which he stated that he was divorced from the defendant's mother when the defendant was four years old. The affiant also stated that six years later, he received "information" that his son was abused by his stepfather and neglected by both his mother and stepfather. The affidavit contains no additional details regarding the nature of this alleged abuse and neglect. The affiant also stated that he was given custody of his son when the defendant was 10 years old and that, at some later unspecified date, the defendant worked in the affiant's private janitorial business.

We cannot conclude that defendant's trial counsel was ineffective for failing to call the defendant's father to testify at the capital sentencing hearing. It appears from the affidavit that the father had no contact with his son between the ages of 4 and 10, and does not set out any circumstance or qualities of character of the defendant between the age of 10 and the time of the murder that would mitigate. The only information this witness could have offered, that the jury did not otherwise receive, related to abuse and neglect which the defendant's mother and stepfather allegedly inflicted upon the defendant. The affidavit reveals, however, that the defendant's father had no personal knowledge of that abuse and neglect, but relied only upon hearsay information received

from an unidentified source. Finally, the defendant does not contend that he informed his trial counsel that his father was alive and could serve as a mitigation witness or that his counsel failed to conduct a reasonable investigation of his personal background.

The defendant also challenges his trial counsel's failure to call his girlfriend, Linda Knox, and her mother, Beatrice Knox, to testify in mitigation. The defendant supplemented his post-conviction petition with a transcript of the testimony which these witnesses gave at the death penalty hearing in the defendant's subsequent trial for an unrelated murder (see *People v. Owens* (1984), 102 Ill. 2d 88) (hereafter, *Owens II*). In *Owens II*, Beatrice Knox testified that the defendant lived in her home with her daughter for three years. She also testified that the defendant never stole from her and was "a sweet person." She stated that she did not think the defendant should be executed because she did not believe that he committed the crimes of which he was accused. Although Beatrice Knox offered generally favorable testimony at the *Owens II* sentencing hearing, the transcript of her testimony reveals that she was not an effective witness. The defendant's counsel may have reasonably concluded that her testimony, which was at times unintelligible and contradictory at the *Owens II* sentencing hearing, would not have improved his client's position with the jury. In addition, counsel may have determined that the jury would not be favorably impressed with the fact that the defendant lived in Beatrice's home with her daughter for three years and without paying rent, as the mother testified.

Linda Knox testified in *Owens II* that she had known the defendant for six years and had lived with him, in her mother's home, for three years. She and the defendant had a child during this period. She testified that the defendant was employed only six months during the six

years that she knew him. She stated that she gave the defendant half of her paycheck proceeds, which he used for himself.

Linda Knox was certainly a more articulate witness than her mother and the jury might have responded sympathetically to her testimony that the defendant had a child and was not violent. The defendant's trial counsel may have concluded, however, that the jury would respond negatively to Linda's testimony that she gave the defendant half of the pay she regularly brought home and that this money was for the defendant's personal use while he lived in the Knox home rent free. In addition, defendant's trial counsel may have feared that the prosecution would cross-examine Linda about her involvement with the defendant on the night of the murder for which the defendant was subsequently convicted and sentenced to death in *Owens II*. The evidence in *Owens II* established that Linda accompanied the defendant to a bar on the night of the murder, where the defendant urged her to offer sexual favors to the victim in exchange for money. Linda then accompanied the defendant home, where he left her shortly before murdering the victim. The danger that this damaging information might be brought out on cross-examination certainly at best reduced Linda's value as a mitigation witness. Accordingly, while it can be argued that the three suggested witnesses might have given relevant mitigating evidence, it cannot be fairly concluded that the defendant's trial counsel acted unreasonably in failing to call these vulnerable witnesses to testify at the sentencing hearing.

*Our conclusion is consistent with recent decisions of the United States Supreme Court which held that an attorney's decision not to introduce particular mitigating evidence at a sentencing hearing was competent when viewed in light of counsel's overall strategy* (*Burger v. Kemp* (1987), 483 U.S. 776, 97 L. Ed. 2d 638, 107 S. Ct.

3114; *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052). In *Burger*, the Court rejected the claim that the attorney representing an accused murderer was ineffective for failing to present evidence at the hearing where the accused was sentenced to death that the accused had an exceptionally unstable and unhappy childhood. The Court determined that the attorney made a reasonable and professional judgment that the evidence would contribute little to his client's chances of obtaining a life sentence while revealing possibly damaging details about his past and allowing potentially devastating cross-examination. Instead of offering mitigating evidence, the attorney made a tactical decision to argue that the accused was considerably less culpable than his codefendant and that the accused's actions were principally the result of the codefendant's influence.

Here, as in *Burger*, defendant's counsel pursued a reasonable and competent strategy at the capital sentencing hearing. The record reflects that counsel vigorously sought to persuade the jury that mitigating factors warranted a life sentence, rather than a sentence of death. Defendant's counsel first argued that the defendant struck the victim only after she came at him with a knife, and was therefore acting in self-defense. Counsel also called a police officer to testify that the victim was a convicted drug dealer who would be very dangerous when in possession of a knife. The defendant's counsel also argued that it would be unfair to sentence the defendant to death when his codefendant, who he argued was equally culpable, had entered into a plea agreement with the State and was given a sentence of only six years. Counsel also urged the jury not to consider other crimes with which the defendant was charged, but not yet convicted. Finally, defendant's counsel urged the jury to consider the defendant's youth at the time of the offense, and the fact that he endured a very unstable childhood. In light of all of the

mitigating circumstances which defendant's counsel brought to the jury's attention, we cannot conclude that counsel's professional handling and conduct at the capital sentencing hearing were outside the broad range of professionally competent assistance.

The defendant also cannot satisfy the second prong of the *Strickland* test, because he cannot show a reasonable probability that the result of the proceedings would have been different had the prospective witnesses testified at the sentencing hearing. The evidence of aggravating circumstances which the State offered during the sentencing hearing was overwhelming. The defendant's first contact with law enforcement officials occurred in 1977, when he was adjudicated a delinquent and sent to the Youth Commission for 1½ years, after committing burglary and aggravated battery. In 1980, the defendant pleaded guilty to battery and was sentenced to 21 days in jail. One month later, the defendant was convicted of theft and was again sentenced to 21 days in jail. The State also established that two murder indictments were pending against the defendant, and introduced into evidence the defendant's handwritten statement in which he confessed that he robbed and beat one victim named in one of the indictments, and that he shot the victim named in the other indictment. The evidence the State introduced at the sentencing hearing convincingly established that the defendant had a history of violence and had brutally murdered and robbed three victims in the course of one week. Undaunted, the defendant's trial counsel vigorously urged the jury that there were mitigating factors that warranted a life sentence, rather than the death penalty. We judge that the defendant failed to make a substantial showing that he was deprived of the effective assistance of counsel at his sentencing hearing. Accordingly, the trial court did not err in dismissing the petition without an evidentiary hearing.

The defendant also claims that the jurors were erroneously instructed at the first stage of the death penalty hearing that they had to reach a unanimous agreement that the defendant was not eligible for the death penalty. The record reflects that the trial court instructed the jury that the defendant could be found eligible for death only if the State proved that the defendant was at least 18 years old at the time of the murder, that the victim was killed in the course of a robbery or armed robbery, that the defendant actually killed the victim, and that he acted intentionally or with knowledge that his actions created a strong possibility of death or great bodily harm to the victim. The court also instructed the jury that if they concluded that any of these elements was not proved beyond a reasonable doubt, they should sign the verdict form so indicating that conclusion. The court also informed the jurors that their agreement upon a verdict must be unanimous and that, when they reached a unanimous agreement, they should select and complete the form which reflected their verdict.

The defendant claims that the court erroneously failed to instruct the jurors that they should sign the verdict form indicating that the defendant was not eligible for the death penalty if they could not unanimously find beyond a reasonable doubt that the statutory aggravating factor existed. The State responds that, even if the trial court did not properly instruct the jurors on the points the defendant now raises, any resulting errors would have to be considered as waived.

The record shows that the defendant first raised the claims that the jurors were erroneously instructed and that the jury instruction described was not given in a supplemental brief filed on this appeal from the dismissal of his petition for post-conviction relief. Issues that could have been presented on direct appeal but were not are deemed waived. (*People v. Gaines* (1984), 105 Ill. 2d 79.)

The defendant had opportunity to challenge the alleged errors in instruction at trial, by post-trial motion and on direct appeal, and failed to do so, and is barred from raising the issues on this appeal.

The defendant erroneously contends that we may consider procedural defaulted claims in post-conviction proceedings under the "plain error" rule. The "plain error" rule permits a court on direct appeal to take notice of plain errors and defects affecting substantial rights which were not brought to the attention of the trial court. (107 Ill. 2d R. 615(a).) In *People v. Free* (1988), 122 Ill. 2d 367, 377-78, however, this court held that the plain error rule may not be invoked when a defendant collaterally attacks his conviction or sentence under the Post-Conviction Hearing Act. The defendant argues that *Free* is not controlling here, because that decision involved an appeal from the dismissal of a second post-conviction petition, whereas he is appealing from the dismissal of his first post-conviction petition. So narrow an interpretation of *Free* cannot be taken.

The holding in *Free* was that the plain error rule did not apply to procedurally defaulted claims which were raised in the defendant's second post-conviction petition; its rationale would apply with equal force to procedurally defaulted claims raised in an original or an amended post-conviction petition. Using the Supreme Court's analysis in *United States v. Frady* (1982), 456 U.S. 152, 71 L. Ed. 2d 816, 102 S. Ct. 1584, this court in *Free* observed that once the defendant's conviction and sentence are reviewed and affirmed on direct appeal, the State has a legitimate interest in preserving the finality of that affirmance. A post-conviction remedy, by its very nature, threatens the State's interest in finality by allowing a defendant to launch a collateral attack upon his criminal conviction and sentence. As the *Free* court observed, to permit the review, under the plain error rule, of proce-

durally defaulted claims that are raised for the first time in a post-conviction petition would deprive the affirmance on direct appeal of significance. Here, as in *Free*, we conclude that a defendant may not seek review of procedurally defaulted claims raised in a post-conviction petition under the plain error rule.

It should be noted, however, that the application of the waiver rule is not a jurisdictional or absolute bar to review of procedurally defaulted claims, but rather is a rule of administrative convenience. (*People v. Crews* (1988), 122 Ill. 2d 266, 275.) Where fundamental fairness requires, the rule of waiver will not be applied in post-conviction proceedings. (See *People v. Gaines* (1984), 105 Ill. 2d 79, 91; *People v. Burns* (1979), 75 Ill. 2d 282, 290; *People v. Partin* (1977), 69 Ill. 2d 80.) The Supreme Court in *Wainwright v. Sykes* (1977), 433 U.S. 72, 53 L. Ed. 2d 594, 97 S. Ct. 2497, described when it would be necessary for a court to consider the fundamental fairness principle when the prosecutor relies on a claim of waiver. There the Court held that "fundamental fairness" requires courts to review procedurally defaulted claims in collateral proceedings only when a defendant shows cognizable "cause" for his failure to make timely objection, and shows "actual prejudice" flowing from the error now complained of.

Although the court in *Sykes* did not define this "cause and prejudice" standard, it recently considered the question of "prejudice" in *United States v. Frady* (1982), 456 U.S. 152, 71 L. Ed. 2d 816, 102 S. Ct. 1584. In *Frady*, a prisoner alleged that he was entitled to collateral relief because the trial judge improperly instructed the jury on the issue of malice. The Supreme Court explained that a defendant who fails to object to an error at trial must show, not simply that the errors "created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his

entire trial with error of constitutional dimensions." (Emphasis in original.) (456 U.S. at 170, 71 L. Ed. 2d at 832, 102 S. Ct. at 1596.) The Court went on to state that the defendant failed to meet his burden of showing actual prejudice, as the evidence of guilt was overwhelming and there was no substantial likelihood that the jury that convicted him would have reached a different result, had it been properly instructed. Under the *Frady* analysis, a defendant can demonstrate "prejudice" only if he shows, not simply that an error in instruction worked to his detriment, but that the result of the proceeding would have been different if the proper instruction had been given.

Applying the *Frady* holding here, the defendant could not show, even if his claim of a failure to properly instruct was correct, that the challenged jury instructions resulted in such prejudice that under fundamental fairness he is entitled to collateral relief. (*United States v. Frady* (1982), 456 U.S. 152, 71 L. Ed. 2d 816, 102 S. Ct. 1584.) As stated, to establish "prejudice" a defendant must show, not simply a possibility of prejudice, but that the claimed error worked to his actual and substantial disadvantage. The record discloses that both the instructions and the language of the verdict forms submitted to the jury unambiguously informed the jurors that they could find the defendant eligible for the death penalty only if they unanimously agreed that the State had proved beyond a reasonable doubt each proposition necessary to establish the existence of the statutory aggravating factor. Although the defendant's trial counsel could have requested additional instructions to clarify the jury's duty, nothing in the record suggests that the tendered instructions confused the jurors, or that the jurors did not understand that they should enter a verdict finding the defendant ineligible for death if they could not reach a unanimous agreement as to the existence of the statutory

aggravating factor. In addition, the evidence at trial clearly supported the jury's finding that defendant murdered the victim in the course of the armed robbery, and was therefore eligible for the death sentence.

The two recent decisions that the defendant cites as authority for his argument that his sentence must be vacated are distinguishable. (*Mills v. Maryland* (1988), 486 U.S. 367, 100 L. Ed. 2d 384, 108 S. Ct. 1860; *Kubat v. Thieret* (7th Cir. Jan. 24, 1989), Nos. 88—1440, 88—1520.) In *Mills*, the United States Supreme Court held that, in a capital case, a sentencer may not be precluded from considering any relevant mitigating circumstance that the defendant proffers as a basis for a sentence less than death. The Court then vacated a death sentence imposed under Maryland's capital sentencing scheme, finding that there was a substantial probability that reasonable jurors, upon receiving the judge's instructions and in completing the verdict forms, may have thought they were precluded from considering any mitigating evidence unless all jurors unanimously agreed on the existence of a particular mitigating circumstance.

Similarly, in *Kubat*, the 7th Circuit Court of Appeals held that the jury instructions given at the second stage of Kubat's sentencing hearing violated the eighth amendment. The court found that there was a substantial possibility that the jurors, after receiving the judge's instructions and verdict forms, mistakenly believed that they should sentence Kubat to death unless all jurors unanimously agreed that the mitigating factors outweighed the aggravating factors. The court therefore vacated Kubat's death sentence.

*Mills* and *Kubat* are distinguishable in two respects from this case. First, both the *Mills* and *Kubat* courts considered instructions given at the second phase of the death penalty hearing, at which the jury considers mitigating evidence. Both courts found that reasonable ju-

rors may have understood the instructions to prohibit them from considering relevant mitigating evidence in deciding whether to sentence the defendant to death. The courts vacated the death sentences because the jury instructions created an unacceptable risk that the jurors imposed the death penalty in spite of mitigating circumstances that may have called for a less severe penalty.

In this case, by contrast, the allegedly erroneous instructions were given at the first stage of the sentencing hearing, at which the jury determines whether a statutory aggravating factor exists which makes the defendant eligible for death. Unlike *Mills* and *Kubat*, there was no risk that the tendered instructions precluded the jury from considering relevant mitigating factors which may have called for a less severe penalty.

More importantly, this case is distinguishable from *Mills* and *Kubat* because the defendants there were not barred by reason of procedural default from challenging the erroneous instructions in the Supreme Court and the 7th Circuit. The defendant here, on the other hand, is barred from challenging the allegedly erroneous instructions in this collateral post-conviction proceeding. As stated, the defendant first challenged the sufficiency of the jury instructions in a supplemental brief he filed in this appeal from the dismissal of his amended post-conviction petition. We have determined that fundamental fairness does not require further review of his claims.

The defendant finally challenges the constitutionality of our death penalty statute. Specifically, the defendant argues that the death penalty statute is unconstitutional because it requires defendants to bear the burden of persuasion on the question whether sufficient mitigating circumstances exist to preclude the imposition of the death penalty. This court has previously rejected that contention (*People v. Whitehead* (1987), 116 Ill. 2d 425, 465; *People v. Owens* (1984), 102 Ill. 2d 88, 115), and the

defendant has not advanced persuading reasons to change our view.

For the reasons stated, the judgment of the circuit court of Kankakee County is affirmed. The clerk of this court is directed to enter an order setting Wednesday, September 20, 1989, as the date on which the sentence of death entered in the circuit court is to be implemented. The defendant shall be executed by lethal injection in the manner provided by section 119—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 119—5). The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, the warden at Stateville Correctional Center, and the warden of the institution wherein the defendant is confined.

*Judgment affirmed.*

JUSTICE CALVO took no part in the consideration or decision of this case.