**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2019 IL App (3d) 180714-U

Order filed November 22, 2019

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2019

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Appeal No. 3-18-0714 Circuit Nos. 16-TR-6168, 16-TR-6169, and 16-TR-6170 |
| CINQUE ROBINSON, | ) ) ) | Honorable Chrystel L. Gavlin, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE O'BRIEN delivered the judgment of the court.
Justices Holdridge and Wright concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*: The circuit court did not err in denying defendant's petition for relief from judgement where defendant failed to exercise due diligence in presenting his claims.

¶ 2    Defendant, Cinque Robinson, appeals the denial of his petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 *et seq.* (West 2018)). We affirm.

¶ 3                                    I. BACKGROUND

¶ 4       Defendant was charged with driving while his license was suspended (625 ILCS 5/6-303 (West 2016)), speeding 26 to 34 miles per hour over the speed limit (*id.* § 11-601.5(a)), and failing to yield to an emergency vehicle (*id.* § 11-907(a)).[1]

¶ 5       A bench trial was held. Defendant represented himself at the trial.

¶ 6       The State called Trooper Jeremy Kunken as a witness. Kunken testified that he was on duty on the night of the incident. He was driving a fully marked squad car. As Kunken was entering Interstate 55, he observed a vehicle traveling at a high rate of speed. Kunken estimated that the vehicle was traveling at a speed of over 80 miles per hour. Kunken later determined that defendant was driving the vehicle. Kunken testified that it took him "a while" to catch up to defendant's vehicle. Once Kunken caught up to defendant's vehicle, he activated his moving radar unit. Kunken's radar unit initially reported that defendant was traveling 78 miles per hour, but Kunken wanted to wait to stop defendant until they reached a part of the highway with a wider shoulder. By the time they arrived at this area, defendant's speed had increased to 85 miles per hour. The speed limit was 55 miles per hour.

¶ 7       Kunken testified that he had checked his moving radar unit before the beginning of his shift that evening, and he determined that it was working properly. The device had a margin of error of "[p]lus or minus two miles per hour." Kunken stated:

> "[The radar unit] is not vehicle specific but you go behind the vehicle, if traffic is light enough, and, like I said, I estimated his speed over 80 miles per hour, at least

---

[1]The State asserts in its brief that the uniform traffic citations charging defendant with driving while his license was suspended and failing to yield to an emergency vehicle do not appear in the record on appeal. The State indicates that only the record for Will County case No. 16-TR-6169 is included in the appellate record. We note, however, that the records in Will County case Nos. 16-TR-6168 and 16-TR-6170 are also included in the record in this appeal. Accordingly, all the uniform traffic citations are contained in the record.

80 miles per hour to begin with, and I just used the radar unit to confirm that vehicle's speed by positioning my vehicle behind it."

¶ 8    Kunken activated his emergency lights, and defendant's vehicle pulled over to the left. Kunken testified that it was a traffic violation to move to the left rather than the right when an authorized emergency vehicle approached with its lights on. Kunken was concerned for both his and defendant's safety, so he indicated to defendant to move over to the right shoulder. Defendant complied. Kunken approached defendant's vehicle and told defendant he had stopped defendant because his radar indicated that defendant was traveling at the rate of 85 miles per hour. Kunken said defendant had been traveling at 78 miles per hour for "an extended period of time," and then defendant "took off." At that point, Kunken "locked it in at 85" miles per hour. Kunken asked defendant for his driver's license, but defendant did not have it. Defendant gave Kunken his name and birthdate. Kunken returned to his squad car and performed a license check on his computer. Kunken learned that defendant's license was suspended. Kunken arrested defendant.

¶ 9    Kunken testified that his squad car had working video and audio on the night of the incident. The video recording began one minute before Kunken activated his emergency lights. Kunken stated that he had seen the video, and it was a true and accurate representation of the events that took place on the night of the incident. A video recording of the encounter was admitted and played. The video is not included in the record on appeal.

¶ 10    The State rested. Defendant did not testify or otherwise present any evidence.

¶ 11    During closing arguments, defendant argued that it had not been proven beyond a reasonable doubt that he was speeding. Defendant said that if he was driving over the speed limit, it was justified because it was a necessary use of force to prevent imminent death or great bodily

harm. Defendant said he did not initially know that the vehicle following him was a squad car. Defendant stated:

"I am from Chicago and there had been a lot of shootings on the expressways at that time. And I think a reasonable person living in that environment might get suspicious of someone driving up on them so close and not identifying themselves immediately and going that distance, following close without identifying himself."

Defendant further argued that pulling over to the left side of the road was not unacceptable and stated that he pulled over when the officer activated his emergency lights.

¶ 12     The State argued that the affirmative defense that defendant was justified in using force did not apply because no force was used.

¶ 13     The court found defendant guilty of all three charges and sentenced him to 12 months' court supervision.

¶ 14     Defendant filed a posttrial motion to reconsider the court's finding of guilt. The defendant argued that the State failed to prove beyond a reasonable doubt that he was speeding 26 to 34 miles over the speed limit. Defendant noted that there was no printout from the officer's radar device. Defendant stated that he did not know that it was a police officer who was following his vehicle so closely, and he was afraid because there had recently been shootings in the area.

¶ 15     The court denied the motion to reconsider. The court noted that it had found Kunken to be a credible witness. The court stated that Kunken was not required to have "any type of a printout or anything like that or dash cam that shows the speed."

¶ 16     Defendant filed a notice of appeal, which he later withdrew.

¶ 17     Defendant filed a petition pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2018)), which is the subject of the instant appeal. In the petition, defendant claimed that

4

Kunken's testimony at trial was not credible. Specifically, defendant alleged that his vehicle was not in view when Kunken's squad car camera began recording. Defendant also alleged that Kunken failed to describe the vehicle he claimed was speeding. Defendant also noted that Kunken testified that his radar was not vehicle specific and that Kunken never testified that it became vehicle specific at any point. Defendant stated that in the video recording, the distance between his vehicle and Kunken's never increased. Defendant also alleged:

> "According to Google, from *** where the trooper testifies first spotting a vehicle traveling at least 80 miles per hour, to *** the location the trooper testifies to turning on his radar, is 3.0 miles. At 78 miles per hour, it would take 2.3 minutes to travel that distance. According to Google, the distance from the place where he states he saw a vehicle traveling at least 80 miles an hour *** to the location where he pulled me over *** is 4.5 miles. So, it would take a vehicle from the location where the trooper saw the speeding vehicle to the location where he pulled me over (4.5 miles), 3.46 minutes to travel that distance at 78 miles per hour. And less time than that if at any point in that distance, that same vehicle goes from 78 miles per hour to 85 miles per hour.

> The trooper does not define his use of the phrase 'a while.' But he states repeatedly that it took him a while to catch up to me. However, three-and-half-minutes [*sic*] is not a long time. The trooper would also have to drive well over 80 miles per hour, initially, in order to catch up to someone driving 78 miles per hour in the same direction. The trooper has less than 2.3 minutes to catch up to the speeding vehicle, if indeed he catches up to the vehicle at mile marker 269 as he testified to."

5

¶ 18   Citing section 7-11(a) of the Criminal Code of 2012 (720 ILCS 5/7-11(a) (West 2016)), the petition also alleged that defendant's conduct was excused by the affirmative defense of compulsion. Defendant alleged that he believed that his safety was in danger when Kunken started following his vehicle closely, and he "picked up speed" at that time. However, defendant did not admit that his speed ever exceeded the speed limit. Defendant alleged that he did not initially know that the individual following him was a police officer and that there had been many shootings on expressways in the Chicago area that year.

¶ 19   A hearing was held on the petition. Defendant stated that he had presented new evidence with his petition—specifically, evidence of the distance between the point where Kunken saw his vehicle and the point where Kunken stopped his vehicle and the time it would have taken to travel that distance. Defendant said he did not think to collect this evidence until he heard Kunken's testimony at the trial. Defendant also argued that Kunken's testimony was not credible.

¶ 20   The State argued that the court had heard the trial evidence and had found Kunken to be credible. The State contended that all the information defendant needed to raise his affirmative defense of compulsion was available to him before and at the trial, but he chose not to put forth such a defense.

¶ 21   The court denied the petition. The court reasoned that defendant should have presented the defenses he raised in his section 2-1401 petition at the trial.

¶ 22                              II. ANALYSIS

¶ 23   On appeal, defendant argues that the court erred in denying his section 2-1401 petition. We find that the court properly denied the petition because defendant failed to exercise due diligence in presenting his claims.

¶ 24    By filing a petition under section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2016)), a defendant may obtain relief from a final order or judgment after 30 days have passed since the entry of the judgment. A section 2-1401 petition is filed in the same proceeding in which the order or judgment was entered, but it is not a continuation of the original proceeding. *Id.* § 2-1401(b). Rather, it is the commencement of a new cause of action. *Cavitt v. Repel*, 2015 IL App (1st) 133382, ¶ 45. "A section 2-1401 petition for relief from a final judgment is the forum in a criminal case in which to correct all errors of fact occurring in the prosecution of a cause, unknown to the petitioner and court at the time judgment was entered, which, if then known, would have prevented its rendition." *People v. Haynes*, 192 Ill. 2d 437, 461 (2000).

> "[T]o be entitled to relief from a final judgment or order under section 2-1401, the petition must set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief." *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 37.

"A section 2-1401 petition *** is 'not designed to provide a general review of all trial errors nor to substitute for direct appeal.' " *Haynes*, 192 Ill. 2d at 461 (quoting *People v. Berland*, 74 Ill. 2d 286, 314 (1978)).

¶ 25    Initially, the parties disagree as to the applicable standard of review. Defendant argues that the judgment of the circuit court should be reviewed for abuse of discretion, while the State argues that *de novo* review is appropriate. In the past, our supreme court reviewed the circuit courts' rulings on section 2-1401 petitions for abuse of discretion. See *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 221 (1986). However, in *People v. Vincent*, 226 Ill. 2d 1, 18 (2007), our supreme court held

7

that a *de novo* standard of review applies when the circuit court enters a judgment on the pleadings or a dismissal in a section 2-1401 proceeding. The supreme court subsequently clarified that "*Vincent* must be viewed in its narrow context of a section 2-1401 petition that raises a purely legal challenge to a judgment by alleging that it is void ***." *Warren County*, 2015 IL 117783, ¶ 47. In *Warren County*, the court held that where a section 2-1401 petition raises a fact-dependent challenge to a final judgment, an abuse of discretion standard applies. *Id.* ¶ 51. In the instant case, we believe the appropriate standard of review is the abuse of discretion standard. The issues raised in the section 2-1401 petition—namely, the defense of compulsion and Kunken's credibility—were fact dependent. See *id.* We note, however, that our holding would be the same under either standard.

¶ 26 Turning to the substantive issue on appeal, we find that the circuit court properly denied defendant's section 2-1401 petition because defendant failed to exercise due diligence in presenting the claims raised in the petition. "Due diligence requires the section 2-1401 petitioner to have a reasonable excuse for failing to act within the appropriate time." *Smith*, 114 Ill. 2d at 222. Here, all the information needed to raise the affirmative defense of compulsion set forth in the section 2-1401 petition was available to defendant at the time of trial. In fact, defendant remarked during closing arguments that there had been recent shootings on local expressways and a reasonable person might be suspicious of a vehicle following him or her closely. Defendant could have testified at trial about his alleged fear for his safety and argued that his conduct was excused by the defense of compulsion, but he chose not to do so. "[S]ection 2-1401 does not afford a litigant a remedy whereby he may be relieved of the consequences of his own mistake or negligence." *Id.*

¶ 27 In his appellate brief, defendant states: "My dominant argument, in arguing compulsion, was that the State trooper who pulled me over, never had a lawful reason to do so, and therefore,

had no reason to ask for my identification." Defendant acknowledges that he had not "stated it that way" previously but asks us to "notice this statement now" pursuant to the plain error doctrine under Illinois Supreme Court Rule 615(a). Defendant has provided no explanation as to why he failed to present this argument previously. We find that defendant has forfeited this issue and that plain error review is not available to defendant. Our supreme court has held that "the plain error rule may not be invoked when a defendant collaterally attacks his conviction or sentence under the Post-Conviction Hearing Act." *People v. Owens*, 129 Ill. 2d 303, 316 (1989). The *Owens* court's holding applies with equal force to section 2-1401 proceedings, which are also a collateral attack on the criminal conviction.

¶ 28    Similar to the compulsion defense, the challenges to Kunken's credibility set forth in the section 2-1401 petition could have been raised at trial. Most of defendant's arguments concerning Kunken's credibility were entirely based on Kunken's trial testimony and the squad car video footage presented at trial. The only arguably new evidence defendant presented regarding Kunken's credibility was the evidence of the distance between the point where Kunken testified that he first saw defendant's vehicle and the point where defendant was stopped and the mathematical calculation of how long it would take to travel that distance at the speed of 78 miles per hour. However, this evidence was available to defendant at or before the trial, and defendant could have also raised this claim in his motion to reconsider the court's finding of guilt. Defendant has provided no reasonable excuse for failing to raise this issue at trial or in a posttrial motion.

¶ 29    Even setting aside defendant's lack of diligence, his attack on Kunken's credibility based on the time it would have taken to drive from the point where Kunken first saw him to the point where Kunken stopped his vehicle lacked merit. Defendant argued that, based on his calculations, it would have taken Kunken two to three minutes to catch up to defendant. Defendant further

9

argued that this was inconsistent with Kunken's testimony that it took him "a while" to catch up to defendant. However, the term "a while" is vague. Kunken's testimony that it took him "a while" to catch up with defendant is not necessarily inconsistent with defendant's assertion that it would have taken approximately two to three minutes.

¶ 30                                  III. CONCLUSION

¶ 31          The judgment of the circuit court of Will County is affirmed.

¶ 32          Affirmed.